## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

DARNELL MEAN,                          )
Y51826,                                )
                                       )
              Plaintiff,               )
                                       )
vs.                                    )
                                       )
PINCKNEYVILLE CORR. CTR.,              )
SCOTT REIS, C/O MUNCH,                 )
C/O GOODMAN, J KH,                     )
J BUTTROM,                             )
SUMMERFIELD, JOHN DOE 1,               )
NURSE CLAP, NURSING STAFF,             )
D. PAYNE, DIANE SKORCH,                )
LT. RANSEN, DAVID MITCHELL,            )
C/O LIVELY,                            )
MARAMONY CHENAULT,                     )    Case No. 23-cv-4011-DWD
RECORDS OFFICE STAFF,                  )
B WALLA, CHRISTAL CROW,                )
DOCTOR MYERS,                          )
NURSE PRACTITIONER BOB,                )
NURSE PRACTITIONER APRIL,              )
NURSE PRACTITIONER JAMIE,              )
PAIGE LONG, LATOYA HUGHES,             )
TRAVIS BAYLOR,                         )
JEREMY BONNETT,                        )
MARGARET MADOLE,                       )
GREGORY LITTLE,                        )
SLOWERS,                               )
                                       )
              Defendants.              )

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

Plaintiff Darnell Mean, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Pinckneyville Correctional Center (Pinckneyville), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional

rights. Initially, Plaintiff presented allegations styled as a petition for a writ of mandamus. (Doc. 1). The Court dismissed his petition for lack of jurisdiction but invited an amended pleading. (Doc. 11). Plaintiff's First Amended Complaint (Doc. 13) was also found to be insufficient to state a claim (Doc. 15), but he has now filed a timely Second Amended Complaint (Doc. 16).

Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Second Amended Complaint (Doc. 16)

Plaintiff's second amended complaint names 29 defendants employed at two facilities—Robinson Correctional Center and Pinckneyville Correctional Center. Plaintiff's allegations begin in May of 2023, at which time he claims that Defendant Reis began to retaliate against him for a PREA (Prison Rape Elimination Act) report concerning a longstanding Wexford nurse. Reis began by confiscating a medically approved pillow, which Plaintiff needed to address breathing issues while he slept. (Doc. 16 at 12). Without the pillow Plaintiff had breathing problems, choked, and nearly passed out one day at the officers' station. At one point, an emergency code was called related to his breathing difficulty.

Plaintiff was fearful of Reis's conduct, so he requested a transfer to another facility for his safety.  He claims the transfer was approved by the transfer coordinator's office in July of 2023, but a related grievance was denied by Defendants Maramony Chenault and Margaret Madole.  (Doc. 16 at 13).

Next, Defendant Reis confiscated some of Plaintiff's extra sheets despite Plaintiff having a medical permit for extra sheets related to his allergies.  Reis wrote a disciplinary ticket related to the sheets that resulted in a brief commissary restriction.  (Doc. 16 at 14). On November 7, 2023, Reis instructed another employee to seize Plaintiff's walker.

On November 12, 2023, Defendants Much and Goodman spoke with Plaintiff and told him that Defendant Reis was "coming for [him] before retirement."  (Doc. 16 at 15). Despite this verbal caution, Plaintiff faults Much and Goodman for failing to act and denying him equal protection.

Plaintiff claims that on November 13, 2023, Reis carried out a premediated retaliatory act when he went to Plaintiff's zone (where he was not assigned) for a zone inspection.  (Doc. 16 at 15).  Reis began to remove sheets from Plaintiff's bed while Plaintiff attempted to stand from his wheelchair to plead with Reis about the sheets. Plaintiff alleges that as he reached for the sheet, Reis tackled him to the ground in a fit of rage and shouted for him to stay down.  (Doc. 16 at 16).  Reis sprung up from the ground as Plaintiff got to his knees, and Reis fled to another area of the room and fell where he appeared trapped.  Reis then stood and called an emergency via his radio.  At the urging of fellow inmates, Plaintiff agreed to be cuffed by Reis.

Ultimately, a disciplinary report was prepared that alleges Plaintiff was pummeling Reis with closed fists, and that he shoved Reis down causing injuries to his back and ribs.  (Doc. 16 at 17).  Defendants J KH and Buttrom were both majors on duty during the incident, and they approved his temporary confinement and continued confinement.  (Doc. 16 at 17).

Around 9p.m. on November 13, 2023, Defendants Summerfield and John Doe 1 Investigator sought Plaintiff out in segregation to speak with him.  Despite demands, threats and also assurances that any information exchanged would remain at the institution, Plaintiff felt unsure about speaking without a lawyer and refused to sign reports prepared by the two.  (Doc. 16 at 17-18).  Mr. Summerfield indicated that he would include in his report that Plaintiff was not examined by a Wexford nurse.  (Doc. 16 at 18).

On November 14, 2023, the medical doctor, Wexford nursing staff, and Nurse Clap saw Plaintiff in segregation to deliver his daily medications.  Nurse Clap took his vitals but otherwise ignored his complaints of injuries.  (Doc. 16 at 19).  About an hour later Plaintiff was informed that he was being transferred.

Upon arrival at Pinckneyville, Plaintiff was greeted by Wexford nursing staff, but his complaints of injuries were ignored.  (Doc. 16 at 19).  He claims it was made obvious that because he assaulted a lieutenant he had to suffer, but he was also told he could make sick call requests.  (Doc. 16 at 20).  He was told where the request slips are kept, and the door to his segregation cell was slammed shut.  Plaintiff alleges that he did not get vital medications "for days."  (Doc. 16 at 20).

On November 17, 2023, Defendant Payne delivered a disciplinary ticket to Plaintiff's cell, but refused to take the stub where Plaintiff had listed witnesses. (Doc. 16 at 21). On November 20, 2023, Plaintiff arrived for his disciplinary hearing and was met by "aggressive" comments from Defendant Little. (Doc. 16 at 22). Little refused to hear Plaintiff's full statement, told him to give the written copy to Defendant Skorch, and insisted Plaintiff plead guilty or not guilty. Plaintiff realized that all three disciplinary members—Defendants Little, Skorch, and Ransen—were lieutenants, which made him feel the hearing was biased because Reis was also a lieutenant. He asked for the hearing to be rescheduled with no success. (Doc. 16 at 22-23).

On November 21, 2023, Plaintiff wrote Defendant Mitchell (the Warden) a letter about the unfair hearing and his need for medical care, but Mitchell ignored him. (Doc. 16 at 23-24). Mitchell also declined emergency status for a grievance on the same issues. Having no other obvious path of recourse, Plaintiff then chose to file the writ of mandamus that was the initiating document in this case. (Doc. 16 at 24).

At some point, Plaintiff alleges he also tried to explain that the disciplinary report was libelous to Defendant Ransen, but Ransen thought it seemed a bit "sketchy and unbelievable." (Doc. 16 at 24-25). Plaintiff also contacted the Illinois State Police about his allegations against Reis, but he was referred back to the Internal Affairs Unit at the prison. (Doc. 16 at 25).

While in restrictive housing at Robinson, Plaintiff sought cleaning supplies to clean his mat and floor due to a lack of medical supplies for his incontinence, but he was denied cleaning supplies. (Doc. 16 at 25). He also was not allowed out of cell time, and

he was not allowed to attempt therapy for the loss of function of his right leg.  He claims grievances about these issues were denied by Defendant Lively.  (Doc. 16 at 25).

On December 20 and 21, 2023, Defendant Slowers handcuffed Plaintiff inside of his segregation cell to remove his cellmate.  Plaintiff showed Slowers an administrative directive, but Slowers continued with is behavior.  (Doc. 16 at 26).

On December 12, 2023, Plaintiff sought a segregation cut so that he could see a medical doctor.  (Doc. 16 at 26).  Because he knew about Plaintiff's mandamus action, Defendant Walla arbitrarily and capriciously denied Plaintiff's request.  Despite Walla's actions, right after the holidays Plaintiff was granted a seven-day cut.  (Doc. 16 at 27).  Plaintiff additionally claims that Walla omitted facts in the disciplinary report.  (Doc. 16 at 27).

Plaintiff asked the Pinckneyville Records Office for a copy of his final disciplinary summary but was told that it was "never received try back at a later date."  (Doc. 16 at 27-28).  He claims that he should have received the final summary within 30 days for purposes of appeal, and he cites the Code of Federal Regulations for this proposition.  (Doc. 16 at 28).  He filed a grievance about not getting a timely final summary report, and after he had been released from restrictive housing on January 4, 2024, Defendants Paige Long and Latoya Hughes concurred on a grievance about this issue.  (Doc. 16 at 28).

Plaintiff claims that while in segregation, Dr. Myers repeatedly ignored or cancelled his appointments because it is "customary" to not be seen by the doctor while in restrictive housing.  (Doc. 16 at 28-29).  After being released from restrictive housing, the call pass line was cancelled on at least three occasions.  On February 16, 2024, he was

furloughed out for an orthopedic consult about foot problems.  Defendants Bonnett, Baylor, Lively and Crow all denied grievances or grievance appeals about his medical needs.  (Doc. 16 at 29).

Eventually, Plaintiff alleges that Defendant April began retaliating against him by insisting that he ingest his medications in crushed form.  (Doc. 16 at 29).  He complained to Defendant Bob about the retaliation, but Bob retaliated on behalf of April or did not intervene.  He also claims that at one point he should have been placed on a seizure watch, but Bob did not conduct it properly after hearing his complaints about April.  (Doc. 16 at 29-30).  He was also initially not allowed to use his wheelchair during this watch.  (Doc. 16 at 30).

In response to a grievance about his disciplinary proceedings, the Administrative Review Board found that the charge of "assault with injury" was not substantiated, so it directed the prison to amend the records.  (Doc. 16 at 30).  Plaintiff was not afforded a new hearing, instead, the records of the discipline were changed, and he just received a new final summary for the reduced charge.  (Doc. 16 at 30-31).  Plaintiff claims that Defendant Walla told him he should just be satisfied that it was no longer an assault with injury charge.  (Doc. 16 at 31).

Plaintiff alleges that he is still being punished because he is only allowed two phone calls per month, and he is not being allowed to contact his family to prepare appropriate release plans for July of 2024.

He also faults Defendants Baylor and Hughes for denying one of his grievance appeals in March of 2024.

In closing, he argues his due process rights were violated by the false disciplinary report and faulty disciplinary proceedings.  He further alleges punishment was imposed as retaliation for seeking redress from the Courts, and that the record changes reflect an abuse of power meant to infringe his First Amendment rights.  Finally, he alleges medical indifference and neglect by "Wexford medical staff completely ignoring request and customary procedure specifically in RH (restrictive housing) is egregious and speaks clearly of the Monell claim."  (Doc. 16 at 32).  Plaintiff seeks monetary and injunctive relief.  He wants to be transferred to a minimum-security prison.

In support of the complaint, Plaintiff submitted various grievance and disciplinary documentation, limited medical records, and other documents.  (Doc. 16 at 44-94).

Based on the allegations in the Second Amended Complaint, the Court designates the following counts:

**Claim 1:** **First Amendment retaliation claim against Defendant Reis for taking Plaintiff's pillow, his walker, and his additional sheets (all of which were medically approved) in the Spring of 2023 at Robinson, and for the physical altercation in November of 2023;**

**Claim 2:** **Eighth Amendment failure to intervene claim against Defendants Munch and Goodman for acknowledging Reis's conduct but failing to act;**

**Claim 3:** **Eighth Amendment deliberate indifference claim against Defendant Clap for ignoring or refusing to address Plaintiff's injuries on November 14, 2023;**

**Claim 4:** **Eighth Amendment deliberate indifference claim against the Wexford nursing staff for refusing to address Plaintiff's injuries upon intake at Pinckneyville;**

Claim 5:     Fourteenth Amendment Due Process claim against Defendant Payne for refusing to take Plaintiff's witness list when he served the disciplinary ticket on November 17, 2023;

Claim 6:     Fourteenth Amendment Due Process claim against Defendants Little, Skorch, and Ransen for their roles in the disciplinary proceedings, including refusing to hear Plaintiff's statement;

Claim 7:     Eighth or Fourteenth Amendment claim against Defendant Mitchell for ignoring Plaintiff's letter and grievances about the biased disciplinary hearing and his ongoing medical needs;

Claim 8:     Eighth Amendment cruel and unusual punishment claim against Defendant Slowers for handcuffing Plaintiff within his segregation cell on two dates in December of 2023;

Claim 9:     Fourteenth Amendment Due Process claim against Defendant Walla for refusing Plaintiff's segregation cut in December of 2023, which he sought for medical reasons;

Claim 10:    Eighth Amendment deliberate indifference claim against Defendant Dr. Myers for cancelling Plaintiff's appointments or refusing to see him while in restrictive housing;

Claim 11:    First Amendment retaliation claim against Defendants April or Bob for their handling of Plaintiff's medications and his need for care;

Claim 12:    Conditions of confinement claim about Plaintiff's stay in restrictive housing at Robinson;

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## Preliminary Dismissals

Plaintiff names Pinckneyville Correctional Center as a defendant, but an inmate cannot sue the physical prison itself, so this defendant is dismissed with prejudice. Additionally, in the closing remarks of his complaint he suggests a *Monell* claim against Wexford, the corporate medical provider, but his allegations are too vague to sustain such a claim, and he did not properly list Wexford as a defendant, so these allegations do not state a valid claim.

Plaintiff names N.P. Jamie in his case caption, and in his listing of defendants, but this individual is not mentioned in the factual narrative. In the listing of defendants, Plaintiff explains that Defendant Jamie denied him eyeglasses and supplies for his incontinence as an act of retaliation. While the denial of medical supplies could be a freestanding claim, or could possibly be a retaliation claim, Plaintiff has not provided enough information about Jamie's actions to proceed. Accordingly, Defendant N.P. Jamie will be dismissed without prejudice.

Plaintiff faults Defendants J KH Major, J. Buttrom, Summerfield, and John Doe 1 for their initial roles immediately following the incident with Defendant Reis on November 13, 2023. Specifically, he claims J KH and Buttram were on duty at the time, and they approved his temporary and continued placement in confinement. Summerfield and John Doe 1 (investigator) came to talk to him in segregation about the incident, but he was reluctant to talk to them and declined to sign any statements. None

of these allegations align with an easily identifiable constitutional right.  Approving temporary placement in a different housing location after a staff-inmate physical altercation is commonplace, and Plaintiff does not allege there was anything wrong with the conditions of the area he was placed.  He also does not make it clear that Summerfield or John Doe 1 did anything wrong, but rather seems to suggest he just did not trust them when speaking about the incident.  Because none of the allegations against these four align with a clearly identifiable constitutional right, these individuals will be dismissed without prejudice from the complaint for failure to state a claim.

Plaintiff named the Records Office Staff at Robinson as a defendant, but this is not a valid method to state a claim because 1983 claims are premised on personal responsibility, and generally cannot stand against an unidentified group or entity.  Additionally, Plaintiff faults the record staff for refusing to give him a copy of his final disciplinary summary, but they merely informed him they did not yet have a copy and that he could inquire further later.  Plaintiff indicates this is a problem by reference to the Code of Federal Regulations, and he attached a copy of that code, but it deals with Federal Bureau of Prisons inmates, and not state inmates.  Even if there was a prison rule that mandated quick release of the final summary, prison rules or regulations do not give rise to § 1983 claims.  As such, there is no valid claim against the Records Office Staff, and this defendant is dismissed without prejudice.

Plaintiff alleges at various junctures throughout his pleading that Defendants C/O Lively, Maramony Chenault, Chrystal Crow, Paige Long, Latoya Hughes, Travis Baylor, Jeremy Bonnett, and Margaret Madole all participated in processing and rejecting his

various grievances.  The mere role of processing grievances, even erroneously, is not sufficient to give rise to a freestanding claim under § 1983.  As such, Plaintiff's allegations against these defendants are insufficient, and they will all be dismissed without prejudice from this action.  If Plaintiff believes he could bring a valid amended claim related to these individuals, it would be properly placed in the severed case because it appears he interacted with these individuals at Pinckneyville, not Robinson.[1]

<u>Discussion</u>

Turning to the substance of Plaintiff's Second Amended Complaint, the Court finds it most efficient to discretionarily sever this matter into two cases—one case for the events at Robinson, and one for the events at Pinckneyville.  *See e.g.*, *Dorsey v. Varga*, 55 F.4th 1094, 1107 (7th Cir. 2022) (a court may sever into a new case mis-joined claims).

Rules 18 and 20 of the Federal Rules of Civil Procedure provide certain limitations on the presentation of different claims against different parties in a single lawsuit.  "A litigant cannot throw all of his grievances, against dozens of different parties, into one stewpot."  *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012). Multiple defendants may not be joined in a single action unless the plaintiff asserts at least one claim to relief against each respondent that arises out of the same transaction or occurrence, or series of transactions or occurrences and presents a question of law or fact common to all.  *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).  The Seventh Circuit has cautioned that courts should guard against "scattershot" pleading strategies, and that

---

[1] The sole exception is Defendants Chenault and Madole, who allegedly reviewed a grievance while he was at Robinson about his request to transfer.  If he believes he has some additional claim against these individuals related to Robinson, it would belong in this case.

they should "target for dismissal 'omnibus' complaints—often brought by repeat players—that raise claims about unrelated conduct against unrelated defendants." *Mitchell v. Kallas*, 895 F.3d 492, 503 (7th Cir. 2018). Even if claims may be eligible for joinder under Rule 20, a Court still possesses discretion to separate the claims into distinct lawsuits. *See e.g.*, *Dorsey*, 55 F.4th at 1103.

Here, Plaintiff's claims are loosely united by an overarching theory of retaliation, or perhaps by his theory of a due process violation, but simply because there are some commonalities across claims, the Court is not required to allow all claims to proceed in a single lawsuit. In this scenario, Plaintiff has now included claims against 29 defendants concerning a rather wide variety of issues, spanning from retaliation about a PREA report, to a physical altercation with a staff member, and to conditions of his confinement and access to medical care for chronic issues at a separate facility. The potentially uniting theories of retaliation are due process are thinly plead, and do not convince the Court that judicial efficiency would be best served by allowing claims to proceed en masse in this single case. Instead, the Court finds it significantly more efficient to allow Claims 1-3 about Robinson to proceed in this lawsuit, while Claims 4-12 about events at Pinckneyville will be severed into a new case.

### Claim 1

Plaintiff alleges that beginning in May of 2023, Defendant Reis started a campaign of retaliation against him related to a PREA investigation of a long-time Wexford nurse. As part of this campaign, Reis confiscated a medically necessary pillow, extra bed sheets, and a walker. After these confiscations, Defendants Munch and Goodman, personally

told Plaintiff that Reis had it out for him.  In a fourth act of retaliation, Plaintiff claims that in November of 2023, Reis entered his housing area for an inspection and initiated a physical altercation with Plaintiff over bedsheets.  Plaintiff suggests that Reis's account of the altercation was inaccurate and led to false discipline.

"First Amendment retaliation cases require the petitioner to show that the speech or activity was constitutionally protected, a deprivation occurred to deter the protected speech or activity, and the speech or activity was at least a motivating factor in the decision to take retaliatory action." *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). The 'motivating factor' amounts to a causal link between the activity and the unlawful retaliation." *Id.*  The test of actionable retaliation is usually whether the retaliatory conduct alleged would "deter a person of ordinary firmness" from the exercise of his First Amendment rights.  *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002).

The Court will assume for purposes of analyzing the complaint, that Plaintiff's PREA activity is sufficient to constitute protected activity for purposes of initial review. He claims that after he initiated a PREA complaint, Reis began to act out against him by confiscated necessary items such as his pillow, sheets, and walker.  He further alleges that two other guards told him Reis was out to get him before he retired.  Even after the warning from other staff, Reis took another overt act against Plaintiff when they got in a physical altercation.  Given the progression of events and the alleged conversation between Plaintiff, Munch and Goodman, the Court will allow him to proceed against Defendant Reis for retaliation at this initial juncture.  Ultimately this claim would turn

first on if Plaintiff engaged in protected First Amendment activity, and then if there is a

causal link between his activity and Reis's that can be substantiated.

<u>Claim 2</u>

Plaintiff alleges that Defendants Munch and Goodman admitted in conversation

that they knew Reis had it out for him, but they failed to take an action to stop Reis's

behavior.  In *Doxtator v. O'Brien,* the Seventh Circuit summarized as follows:

> An officer who is present and fails to intervene to prevent other law
> enforcement officers from infringing the constitutional rights of citizens is
> liable under § 1983 if that officer had reason to know: (1) that excessive force
> was being used, (2) that a citizen has been unjustifiably arrested, or (3) that
> any constitutional violation has been committed by a law enforcement
> official; and the officer had a realistic opportunity to intervene to prevent
> the harm from occurring." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)
> (emphasis omitted). In sum, an officer must know that a citizen's rights are
> being infringed, and he must have a "realistic opportunity" to intervene."

39 F.4th 852, 864 (7th Cir. 2022).

Here, Plaintiff alleges clearly that Munch and Goodman knew or believed Reis

was targeting him, though he does not specifically indicate if they knew of Reis's

previous acts or if they knew Reis had a plan for a future interaction with Plaintiff.  He

does not allege that either Munch or Goodman were present on the day of the altercation

in his cell, or that they specifically knew this interaction may occur.  It is a very close call

whether Plaintiff's allegations against Munch and Goodman are sufficient to proceed for

failure to intervene, but at this early stage the Court must read the pleading broadly in

Plaintiff's favor.  Reading the pleading broadly, Plaintiff could have a plausible claim that

Munch and Goodman knew of ongoing or upcoming retaliation but failed to act.  Claim

2 may proceed against Munch and Goodman.

Plaintiff also mentions Equal Protection in relation to Munch and Goodman, but this assertion is threadbare and is not supported by any obvious assertions that Plaintiff was treated differently than other similarly situated inmates or that he was singled out based on a protected characteristic.  Accordingly, no theory of Equal Protection will proceed.

<u>Claim 3</u>

Plaintiff alleges that the day after the altercation he was seen in segregation by Defendant Clap for routine medications and a check of his vitals.  Despite Clap being physically present, she allegedly refused to inspect or provide care for his injuries.  While these allegations could give rise to a classic deliberate indifference claim, Plaintiff does not provide any detail about the injuries he may have sustained during the altercation with Defendant Reis.  Without information about his physical state, the Court cannot find that Plaintiff has made a threshold showing of a serious medical need.  Accordingly, Claim 3 against Defendant Clap is dismissed without prejudice.

To the extent that Plaintiff also attempted to name a doctor or generic Wexford nursing staff in association with the visit on the morning of November 14, 2023, he cannot proceed for the same reasons related to Nurse Clap.

In sum, Plaintiff will be allowed to proceed on Claims 1 and 2 against Defendants Reis, Goodman and Munch.  All other allegations about occurrences at Robinson are dismissed as insufficient to state a claim.  All allegations related to Pinckneyville that are associated with Claims 4-12 will be severed into a new case.  Service will proceed as described below.

## Motion for Recruitment of Counsel

Plaintiff has moved for recruited counsel (Doc. 15) on the premise that he does not have formal knowledge of legal procedures.  There is  no right to the appointment of counsel in civil matters.  *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010).  When presented with a request to appoint counsel, the Court must consider: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself [.]" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). This is Plaintiff's Second Motion for Counsel.  His first was denied in part because he did not provide of his efforts to seek his own counsel, and in part because he appeared competent to represent his interests.  In the Second Motion (Doc. 15), Plaintiff has included proof that he has contacted at least one law firm, and a few other entities for assistance with this case.

Despite Plaintiff's efforts to secure his own assistance, the Court must also determine if he is capable at this time of representing his own interests.  On this front, Plaintiff indicated he has some college education and that he can read, understand, and learn with some lapses related to his seizure disorder and past brain damage.  At this early juncture of the case, the Court finds Plaintiff competent.  He has prepared two amended pleadings, the second of which is sufficient to proceed.  The next steps of the case will require a basic exchange of information and an inquiry into the exhaustion of administrative remedies.  These tasks are guided by clear scheduling orders and should be within Plaintiff's abilities.  Plaintiff may renew his motion later in this case if necessary.

**<u>Motion for a Temporary Restraining Order or Preliminary Injunction (Doc. 18)</u>**

On June 6, 2024, the Court received Plaintiff's Motion for a Temporary Restraining Order (Doc. 18), wherein he discusses a wide variety of issues including a state court criminal prosecution against him related to Defendant Reis, a change in his prison security classification, and problems accessing a wide variety of medical care, among other things. As for the state court criminal prosecution, it seems that perhaps he is seeking court intervention on this issue, but federal courts almost always refrain from interfering in ongoing state court criminal matters, and this Court presently sees no basis to intervene in any such proceeding. Plaintiff has not alleged he is unable to genuinely dispute issues before the state court, and that is where he should raise any type of challenge he has to those proceedings.

All other aspects of his Motion (Doc. 18) relate to his confinement at Pinckneyville, and thus to the claims being severed into a new case. As such, the Motion (Doc. 18) will be **DENIED** without prejudice in this case. The Court *could* direct that the Motion (Doc. 18) be filed in the newly severed case, but it will not do so because many of the issues discussed in the Motion pertain to things that do not relate to Claims 4-12. To secure injunctive relief, an inmate must have a likelihood of success on underlying claims, and the relief sought must align with the claims presented. *See e.g., Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020); *Bentz v. Ghosh*, 2018 WL 4084388 at * 1 (S.D. Ill. Aug. 1, 2018) (injunctive relief must relate to the underlying claims, relief lying outside the issues of the suit is beyond the power of the court). The purpose of injunctive relief is to maintain the status quo during litigation, not to stop issues unrelated to the litigation. Accordingly,

Plaintiff's Motion (Doc. 18) will also be **DENIED** with respect to ongoing issues at Robinson because the allegations are too broadly and are largely unrelated to the potential operative claims.  Plaintiff may re-file a motion for injunctive relief in the severed case if he feels it is appropriate.

<u>**Disposition**</u>

For the reasons stated above, Claims 4-12 are severed into a new lawsuit.  Claims 4-12 concern Defendants: Wexford Nursing Staff, D. Payne, Diane Skorch, Lt. Ransen, Gregory Little, David Mitchell, Slowers, B. Walla, Doctor Myers, N.P. Bob, and N.P. April. In the new case, the Clerk is **DIRECTED** to file the following documents:

- This Memorandum and Order;

- The Second Amended Complaint (Doc 16).

The only claims remaining in this case are **Claim 1** against Defendant Reis and **Claim 2** against Defendants Munch and Goodman.  **Claim 3** is dismissed without prejudice as to Defendant Clap.

Any potential claim against the remaining defendants is dismissed for failure to state a claim, for a reason stated in this Order, or because it has been severed into a new case.  The Clerk of Court is **DIRECTED** to **TERMINATE** Defendants: Pinckneyville Correctional Center, J KH Major, J. Buttrom, Summerfield, John Doe 1, Nurse Clap, Nursing Staff, D. Payne, Diane Skorch, Lt. Ransen, David Mitchell, C/O Lively, Maramony Chenault, Records Office Staff at Robinson, Chrystal Crowe, Dr. Myers, Nurse Practitioner Bob, Nurse Practitioner April, Nurse Practitioner Jamie, Paige Long,

Latoya Hughes, Travis Baylor, Jeremy Bonnett, Margaret Madole, Gregory Little, and Defendant Slowers.

The Clerk of Court shall prepare for Defendants Reis, Munch and Goodman: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Second Amended Complaint (Doc. 16), and this Memorandum and Order to the defendants' place of employment as identified by Plaintiff. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis is granted. See 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. See Fed. R. Civ. P. 41(b).

Based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

Plaintiff's Second Motion for Recruitment of Counsel (Doc. 15) is **DENIED** without prejudice, and his Motion for a Temporary Restraining Order (Doc. 18) is also **DENIED** without prejudice.

**IT IS SO ORDERED.**

Dated: June 19, 2024

DAVID W. DUGAN
United States District Judge

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged.