IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DARNELL MEAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Case No. 23-cv-4011-DWD |
| SCOTT REIS, | ) |
| KRISTOPHER MUSTON, | ) |
| DAKOTA GOODWIN, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Darnell Mean, a former inmate of the Illinois Department of Corrections (IDOC) brought this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. Defendants have moved for summary judgment on Plaintiff's failure to exhaust his administrative remedies, and despite a notice about the obligation to respond, Plaintiff has not responded. The time for a response has long since lapsed.

### BACKGROUND

On December 22, 2023, Plaintiff initiated this action by filing a petition for mandamus relief, with the sole named defendant being the State of Illinois. (Doc. 1). The Court reviewed the petition, dismissed it for lack of jurisdiction (Doc. 11), and granted Plaintiff leave to file a § 1983 action if he felt he had relevant claims that could be presented in that context. Plaintiff filed an amended complaint on February 16, 2024, that discussed many individuals but only named Pinckneyville Correctional Center in the

case caption. (Doc. 13 at 1). The amended complaint focused primarily on disciplinary proceedings that were held at Pinckneyville Correctional Center, in relation to an event with Scott Reis on November 13, 2023. The Court dismissed the amended complaint as insufficient to state a claim for a variety of reasons. (Doc. 14). On May 7, 2024, Plaintiff filed a Second Amended Complaint that named many defendants, including Scott Reis, Officer Munch (now identified as Kristopher Muston), and Officer Goodman (now identified as Dakota Goodwin). (Doc. 16).

Relevant to the present motion, Plaintiff alleged in the complaint that Reis retaliated against him for filing a PREA (Prison Rape Elimination Act) complaint on multiple occasions. First, he alleges that on May 31, 2023, Defendant Reis confiscated a special pillow that he had a medical permit to possess. (Doc. 16 at 11-12). Second, he alleges that Defendant Reis confiscated two sheets that he possessed via a medical permit, and Reis wrote a disciplinary report on July 25, 2023, related to the sheets. (Doc. 16 at 14). Third, he alleges that on November 7, 2023, Reis instructed another officer to confiscate his walker. (Doc. 16 at 15). Fourth, he alleges that on November 13, 2023, Defendant Reis "carried out a premeditated retaliatory action," by entering Plaintiff's cell to confiscate a sheet, and the engaging in a physical altercation with him. (Doc. 16 at 15-16). On November 17, 2023, after being transferred to Pinckneyville, Plaintiff was served with a disciplinary report about the incident with Reis. (Doc. 16 at 21).

In relation to Defendants Muston and Goodwin, Plaintiff alleged that on November 12, 2023, they told him that Defendant Reis had "egregious intent" and was

coming for Plaintiff before he retired. (Doc. 16 at 15). Plaintiff faulted them for not doing anything to intervene.

The Court allowed Plaintiff to proceed on two claims related to these allegations, and it severed many other claims into additional lawsuits:

> **Claim 1:** **First Amendment retaliation claim against Defendant Reis for taking Plaintiff's pillow, his walker, and his additional sheets (all of which were medically approved) in the Spring of 2023 at Robinson, and for the physical altercation in November of 2023;**
>
> **Claim 2:** **Eighth Amendment failure to intervene against Defendants Muston and Goodwin for acknowledging Reis's conduct but failing to act.**

(Doc. 19 at 8).

Plaintiff submitted many grievances as exhibits to his second amended complaint, and the Defendants submitted many of the same grievances with their motion for summary judgment. They also submitted a declaration from a member of the Administrative Review Board (ARB)—Lisa Weitkamp—who reviewed grievance files to locate any relevant appeals that Plaintiff lodged thru the final level of the IDOC grievance process.

## FINDINGS OF FACT

Plaintiff submitted an emergency grievance, number 23-0775E, in relation to the confiscation of his pillow, but he explains in his complaint that it was denied emergency status. (Doc. 16 at 12). He alleges he then "rewrote" the grievance and resubmitted it. The resubmitted grievance was assigned number 23-0842. (Doc. 16 at 48-51). In grievance 23-0842, Plaintiff wrote:

> Originally written as an emergency grievance 23-0775E Rob, PP-19a of being in fear here at Robinson Corr. Due to Lt. Reis confiscating my pillow claiming it was altered because there is no plastic coating on it but I was told the removal of it was optional.  However, I have difficulty breathing and was medically given extra pillow to elevate as opposed to lying flat a code was called for me to be rushed to the infirmary by Officer Val and Officer Neal who witnessed me nearly pass out in their presence trying to explain the trouble I was having breathing.  Being unable to lie down sleep. Sgt. Stevens gave me an extra pillow the next day.  How many pillows has he taken in the past 6 mo. None! My pillow was taken in retaliation." (Doc. 16 at 48-49).

In response, the grievance officer opined that a transfer to Lincoln was approved, per the grievance log Plaintiff had not returned 23-0775E for further review, and there was no support for the allegations of staff misconduct, so the grievance was denied.  (Doc. 16 at 50).  The ARB rejected the appeal of grievance 23-0842 on September 14, 2023, explaining that it was inappropriate to refile the grievance instead of pursuing 23-0775E thru all levels.  Plaintiff was directed to finalize 23-0775E and to resubmit it "if within timeframes." (Doc. 16 at 51).  Defendants argue that Plaintiff never resubmitted 23-0775E, and thus never followed the appropriate steps to exhaust the claim against Reis about the pillow.  ARB member Weitkamp declared that she could not find any appeal of grievance 23-0775E, which was "submitted to the ARB during between May of 2023 and December 22, 2023." (Doc. 52-1 at p. 5 ¶ 13).

As for the confiscation of sheets on July 25, 2023, Plaintiff submitted grievance number 23-1408, complaining that he was improperly disciplined on July 25, 2023, concerning excess bedsheets.  (Doc. 52-2 at 9-10).  Plaintiff's original grievance did not mention Defendant Reis by name, though it did allege the incident involved retaliation. The grievance was focused on due process.  The grievance officer's response indicated

that the disciplinary report in question was authored by Defendant Reis. (Doc. 52-2 at 8). The Administrative Review Board processed this grievance on the merits and returned it to Plaintiff on February 27, 2024. (Doc. 52-2 at 7).

Plaintiff filed grievance number 23-1653E alleging that on October 17, 2023, Defendant Reis retaliated by confiscating his walker. (Doc. 52-2 at 5-6). The grievance office processed this grievance, and the ARB reviewed it on the merits and returned it on March 15, 2024. (Doc. 52-2 at 3).

Finally, Plaintiff filed grievance number 4117-12-23 about his November 17, 2023, disciplinary ticket, and the disciplinary hearing. (Doc. 16 at 61-62). The grievance was filed at Pinckneyville and focused heavily on issues with the fairness of the disciplinary hearing. Reis was not mentioned by name. The ARB ruled on the merits of the grievance on February 27, 2024, directing a reduction of the disciplinary charge but making no mention of Reis. (Doc. 16 at 84).

There are no records of grievances appealed to the ARB mentioning Defendants Muston or Goodwin's conduct on November 12, 2023. (Weitkamp Decl., Doc. 52-1 at p. 5 ¶ 12).

## CONCLUSIONS OF LAW

A. Legal Standards

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex*

*Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008).[1] After hearing evidence, finding facts, and determining credibility, the court must decide whether to allow the claim to proceed or to dismiss it for failure to exhaust. *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018). The court is not required to conduct an evidentiary hearing if there is no genuine dispute of material fact, and the determination is purely legal. *See e.g., Walker v. Harris*, 2021 WL 3287832 * 1 (S.D. Ill 2021).

The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey*, 544 F.3d at 740. "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and

---

[1] This case does not involve intertwinement as contemplated by *Perttu v. Richards*, 145 S.Ct. 1793 (2025).

at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024.

As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, et seq. (2017). An inmate must file a grievance within 60 days of an event, 20 Ill. Admin. Code § 504.810(a), and generally, a grievance officer shall make a report to the Chief Administrative Officer within two months of receipt of the written grievance, when reasonably feasible, 20 Ill. Admin. Code § 504.830(e).

If the inmate is not satisfied with the CAO's response, he can file an appeal with the IDOC Director through the Administrative Review Board (ARB). 20 ILL. ADMIN. CODE § 504.850(a). The ARB must receive the appeal within 30 days of the date of the CAO's decision. *Id.* The inmate must attach copies of the responses from the grievance officer and CAO to his appeal. *Id.*

B. Analysis

Plaintiff was notified of his obligation to respond to the Motion for Summary Judgment (Doc. 53) on April 3, 2025, but he did not file a timely response. On September 8, 2025, he transmitted a Notice of Change of Address (Doc. 57) and sought documents from multiple cases. As to this case, he asked for a final order and instructions to lift a stay. There have been no recent orders in this case, so there was nothing to transmit, and there is no stay, so there was not a stay to lift. Given that Plaintiff missed the deadline to

respond by months without asking for an extension, the Court did not retroactively extend Plaintiff's deadline.

The record demonstrates that Plaintiff was well aware of the grievance process, and that he regularly accessed it at all levels of review at multiple prisons to grieve issues. Thus, Defendants have satisfied the initial burden to demonstrate that a grievance process existed, and Plaintiff was able to use it to raise issues presented in this case. The Defendants also carry the burden of establishing that Plaintiff failed to appropriately use the process for claims in this case.

Defendants Goodwin and Muston have established that Claim 2 against them for failure to intervene was not exhausted. Plaintiff made no mention of grieving this in his second amended complaint, and he did not tender any grievances relevant to these two, as he did with many other claims and defendants in his second amended complaint. Defendants presented credible evidence via the declaration of ARB member Weitkamp that no grievances were received at the ARB about Muston and Goodwin. Thus, Plaintiff failed to exhaust administrative remedies for Claim 2, and it is dismissed without prejudice.

Turning to Defendant Reis, Reis primarily argues that none of the grievances were fully exhausted before Plaintiff filed this lawsuit in December of 2023, so Plaintiff is out of luck because he sued first and exhausted later. This argument is unpersuasive in this case given the nature of the original complaint, and the contents of the first amended complaint. The Seventh Circuit has held that an inmate needs to complete exhaustion of a claim by the time the claim is presented to the Court, but that if an amended complaint

adds a new claim, that new claim may have a different exhaustion deadline than the claims associated with the initial suit.  See *Barnes v. Briley*, 420 F.3d 673 (7th Cir. 2005) (finding that an inmate who initially filed an FTCA claim against the CDC, but later amended to add Section 1983 claims against individual defendants, had to complete exhaustion of the 1983 claims before amending his complaint, but not before he had filed the entire action with the FTCA claims); *Cannon v. Washington*, 418 F.3d 714, 719-20 (7th Cir. 2005) (finding that additional 1983 claims added by an amended complaint were properly exhausted where the inmate exhausted them after filing the lawsuit, but before adding new claims and parties by an amended complaint).  Here, Plaintiff's initial suit was a mandamus petition, and his first amended complaint focused on facts and a sole defendant largely distinct from the claims and issues presented in the Second Amended Complaint.  The original complaint was filed in December of 2023, and Plaintiff pursued exhaustion thru February and March of 2024.  By the time Plaintiff filed his Second Amended Complaint to designate novel claims against Reis on May 7, 2024, he had completed exhaustion of all grievances he attached as exhibits to the amended pleading.  Under *Cannon* and *Barnes*, Plaintiff's actions were sufficient to exhaust new claims presented by his Second Amended complaint.

Thus, the Court must take a more detailed look at the four allegations against Reis—confiscation of a pillow, sheets, and a walker, and the physical altercation.  Beginning with the walker, Plaintiff alleged in his Second Amended Complaint that the walker was confiscated in retaliation on November 7, 2023, but the only grievance he supplied about the issue cited an incident in mid-October of 2023. Without a grievance

specific to the November 7 incident, Plaintiff failed to properly exhaust his claim about the walker.

Second, Plaintiff filed an emergency grievance about his pillow, grievance number 23-0775E, and when it was rejected emergency status, he re-filed a grievance via normal channels. Reis argues that because the ARB rejected this as the improper procedure, Plaintiff did not exhaust this claim, but this relies on an overly technical reading of the rules. The Illinois Administrative Code, 20 Ill Admin. 504.840(c) provides that if a grievance is deemed a non-emergency, then the inmate "may resubmit the grievance as non-emergent, in accordance with the standard grievance process." Defendant has not provided any authority to demonstrate that Plaintiff's resubmission on a new grievance form of the grievance that got rejected emergency status was procedurally improper. Although the ARB instructed Plaintiff that he should not re-file a duplicate grievance and should have instead re-filed the grievance that got deemed a non-emergency, they also pointed to no authority for this position. The view pushed by the ARB and Defendant Reis is too narrow, and overly technical. Plaintiff complied with the Administrative Code by re-filing a grievance when he was not afforded emergency review. This gave the prison a full and fair opportunity to address his concerns, but they simply refused to do so. Thus, the Court concludes Claim 1 was properly exhausted concerning the confiscation of Plaintiff's pillow in May of 2023.

As to the confiscation of sheets in July of 2023, the Defendant's sole argument is that Plaintiff did not fully exhaust this grievance before suing, but this grievance was processed at the last level of review February 27, 2024, and Plaintiff did not add this claim

to the suit until May of 2024.  Against this backdrop, the claim was fully exhausted before it was added.

Finally, the Court considers Plaintiff's allegation that Reis retaliated against him by engaging in a physical confrontation on November 12, 2023.  Plaintiff's grievance number 4117-12-23 talks about disciplinary proceedings that were later held at Pinckneyville about this incident with Reis, but it makes no mention of Reis by name, and suggests no intention to hold anyone at Robinson responsible.  Substantively, the contents of the grievance are focused on the Due Process afforded during Plaintiff's disciplinary proceedings at Pinckneyville.  This is different from an allegation that Reis acted out of retaliation at Robinson.  Therefore, even though grievance 4117-12-23 was properly exhausted, it is not substantively sufficient to exhaust the claim against Reis about a retaliatory physical altercation.

In sum, Plaintiff properly exhausted his retaliation claims against Reis for the May 2023 confiscation of his medically-approved pillow and the July 2023 confiscation of medically-approved sheets.  By contrast, Claim 1 was not exhausted concerning his walker or the physical altercation, and Claim 2 was not exhausted concerning Muston or Goodwin.

### DISPOSITION

The Motion for Summary Judgment (Doc. 52) is **GRANTED** in part, and **DENIED** in part.  Claim 1 is unexhausted as to the walker or physical altercation, and Claim 2 is fully unexhausted.  These claims are dismissed without prejudice for failure to exhaust

remedies. The Clerk of Court shall **TERMINATE** Defendants Goodwin and Muston and judgment shall be entered in their favor at the close of this case.

Claim 1 may proceed against Defendant Reis solely related to the May 2023 and July 2023 confiscations of a pillow and sheets and a merits summary judgment schedule shall follow.

**IT IS SO ORDERED.**

Dated: October 29, 2025

/s/ *David W. Dugan*

DAVID W. DUGAN
United States District Judge